UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE A. HADDOCK,

     Plaintiff,

                                Case No. 21-cv-12395
v.                             Hon. Matthew F. Leitman

STATE FARM FIRE AND
CASUALTY COMPANY,

     Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 9)

This case presents a significant and recurring question concerning the scope of the appraisal process under Michigan fire insurance policies. That process is mandated by a statute, Mich. Comp. Laws § 500.2833, *et seq.* (the "Appraisal Statute"). Under the Appraisal Statute, every fire insurance policy must provide that, (1) if the parties fail to agree upon the "amount of the loss," either party may demand an appraisal and (2) during the ensuing appraisal process, the appraisers determine the "amount of the loss." Mich. Comp. Laws § 500.2844(1)(m). The question that continues to arise under this statute is: when appraisers determine the "amount of the loss," may they resolve disputes between the insured and the insurer over whether certain damage was caused by a covered loss?

1

That question arose in this action when Plaintiff Catherine Haddock submitted a claim to Defendant State Farm Fire and Casualty Company, her fire insurance provider, for water damage to her dwelling.  That damage was caused by a burst pipe.  State Farm acknowledged that water damage from the burst pipe was a covered loss under Haddock's policy.  However, State Farm agreed to pay only a portion of Haddock's claim.  It refused to pay the full amount because, in its view, the claim sought reimbursement for damage that was caused by the burst pipe *and* damage caused by some other, non-covered cause of loss.

Haddock then demanded an appraisal on the ground that the parties disagreed over the "amount of the loss."  In connection with that demand, she asserted that, in determining the "amount of loss," the appraisers were entitled to decide which of the claimed damage was caused by the burst pipe and which was caused by something else.  State Farm disagreed.  It countered that the parties' disputes over whether certain damage was caused by the burst pipe presented a coverage dispute – rather than a disagreement over the "amount of the loss" – that had to be resolved by a court.  In this action, Haddock seeks, among other things, a declaration that when the appraisers determine the "amount of the loss," they may properly resolve her dispute with State Farm over the extent of damage that was caused by the burst pipe.

For the reasons explained in detail below, the Court predicts that the Michigan Supreme Court – which has not yet weighed in on this issue – would conclude, in

2

line with the clear majority rule, that determining the "amount of the loss" necessarily involves resolving causation questions. Thus, the Michigan Supreme Court would hold that it is for appraisers, not courts, to resolve causation disputes where an insured has suffered a covered loss and where the parties disagree over the extent of damage caused by that loss.

Given the Court's prediction as to how the Michigan Supreme Court would rule, the Court will **GRANT** Haddock's pending motion for summary judgment to the extent that Haddock seeks a determination that State Farm may not exclude from the appraisal process claimed damage over which there is a dispute as to causation. However, the Court will **DENY** Haddock's motion **WITHOUT PREJUDICE** to the extent that she seeks a determination that one aspect of the appraisal provision in her State Farm policy is unenforceable because it is contrary to the Appraisal Statute. Moreover, the Court will **DENY** Haddock's motion **WITHOUT PREJUDICE** to the extent it seeks a ruling that State Farm must immediately commence the appraisal process. While the parties' dispute over causation is not a "coverage question" to be decided by the Court, State Farm has asserted one or more other true "coverage defenses" that must be resolved before the appraisal process may begin. The Court will confer with the parties to develop an expedited schedule for the resolution of those defenses.

# I

## A

In 2016, Haddock purchased a homeowners insurance policy from State Farm (the "Policy"). (*See* Policy, ECF No. 1-1.)  Under Michigan law, the Policy is treated as a fire insurance policy because fire is one of the covered causes of loss under the Policy. *See, e.g.*, *Musleh v. State Farm Fire & Cas. Co.*, 555 F. App'x 562, 565 (6th Cir. 2014) (applying Michigan law governing fire insurance policies to a State Farm homeowners' insurance policy where the policy covered fire-related losses).

As noted above, the Appraisal Statute requires every fire insurance policy to contain an appraisal provision stating:

> That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the 2 appraisers are unable to agree upon an umpire within 15 days, the insured or insurer may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire. The appraisers shall then set the amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any 2 of these 3 shall set the amount of the loss. Each appraiser shall be paid by

the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by the insured and the insurer.

Mich. Comp. Laws § 500.2833(1)(m).

In an effort to comply with the Appraisal Statute, State Farm included an appraisal provision in the Policy. In relevant part, that provision states:

> 4. Appraisal. If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. You must comply **with SECTION I - CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

(Policy, ECF No. 1, PageID.48; emphasis in original.)

## B

On December 22, 2019, a pipe in the second-floor bathroom of Haddock's house burst while she was out of town. (*See* Decl. of Catherine Haddock, ECF No. 14-3, PageID.942.)  Haddock thereafter filed a claim with State Farm. (*See id.*)  In that claim, she sought reimbursement for, among other things, damage to her dwelling. (*See* Haddock Decl., ECF No. 14-3, PageID.942.)  In support of that claim, Haddock submitted to State Farm a repair estimate from her public adjuster, Claims,

Inc., showing that the cost to repair the damage to her dwelling was $162,228.99. (*See* Repair Estimate, ECF No. 1-2, PageID.67-123.)

In response to Haddock's claim, State Farm acknowledged that Haddock's burst pipe was a covered cause of loss under the Policy. (*See* State Farm Estimate, ECF No. 14-6, PageID.960.) But State Farm refused to pay $162,228.99 to repair the claimed damage to Haddock's dwelling. (*See* 12/17/2020 Denial Letter, ECF No. 1-4, PageID.128.). In a letter to Haddock, State Farm explained that her repair figure was unacceptable because it included, among other things, amounts to repair damage to the dwelling that had not been caused by the pipe rupture. (*See id.* at PageID.129.) State Farm asserted, for example, that Haddock was improperly seeking reimbursement for damage to her first-floor bathroom, kitchen, family room, great room, utility room, bedroom, and basement that had been caused not by the pipe rupture, but instead by "wear and tear" and other uncovered hazards. (*Id*.) State Farm countered that the cost to repair the damage to Haddock's dwelling caused by the burst pipe was $92,834.31. (*See* Summary of Loss, ECF No. 1-3, PageID.125.)

On September 13, 2021, Haddock's counsel, Michael Fabian, sent State Farm a letter demanding that State Farm submit the parties' dispute for an appraisal.[1] (*See*

---

[1] This was the second time Haddock demanded that the parties submit their dispute for an appraisal. She previously demanded an appraisal on July 24, 2020. (*See* 6/17/2020 Letter, ECF No. 9-5, PageID.421.) Haddock's claims in this action are not based upon the earlier demand for an appraisal.

9/13/2021 email, ECF No. 1-6, PageID.138.)  Fabian wrote that the parties should proceed to an appraisal because "State Farm's calculation of the amount of loss is substantially less than the amount of loss determined by Ms. Haddock's public adjuster, Claims Inc., and there continues to be a disagreement concerning the amount of loss between Ms. Haddock and State Farm." (*Id.*)

On September 24, 2021, State Farm responded to Fabian's letter. (*See* 9/24/2021 Ltr., ECF No. 12-3, PageID.868.)  As relevant here, State Farm told Fabian that only part of the party's dispute over the repair costs should be submitted to the appraisal process. (*See id.*)  More specifically, State Farm said that it would "participate in the appraisal process" with respect to the damage to Haddock's dwelling that both parties agreed was caused by the burst pipe. (*Id.*)  But State Farm refused to allow the appraisers to determine the cost to repair damage over which there was a dispute as to causation – *i.e.*, a dispute over whether the damage was caused by the pipe rupture or by some other hazard that was not covered under the Policy.[2] (*See id.*)  According to State Farm, such disagreements over causation present coverage questions that must be resolved by a court rather than by appraisers. (*See* Ans. to Compl., ECF No. 4, PageID.160.)

---

[2] This letter from State Farm referred back to an earlier letter by State Farm (dated December 17, 2020) identifying the damage to Haddock's dwelling that State Farm believed to have been caused by something other than the burst pipe. (*See* 9/24/2021 Ltr. ECF No. 12-3, PageID.868.)  State Farm said the damage identified in that letter should not be submitted to the appraisal process. (*See id.*)

**C**

Haddock filed this action on October 11, 2021. (*See* Compl., ECF No. 1, PageID.7.)  She invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332(a) on the basis that she and State Farm are citizens of different states and that the amount in controversy exceeds $75,000.00 (*See id.* at ¶ 6, PageID.8.)

Haddock brings two claims against State Farm.  First, she seeks a declaratory judgment that (1) several provisions of the appraisal clause in the Policy are void because they are contrary to Michigan law and (2) her "claims shall be submitted" to the appraisal process. (*Id.*, PageID.19.)  Second, she brings a claim for breach of contract in which she alleges that State Farm breached the Policy "when it refused to submit [her] claims" to the appraisal process. (*Id.*, PageID.20.)

Haddock moved for summary judgment on January 25, 2022. (*See* Mot., ECF No. 9.)  Haddock seeks three types of relief in her motion.  First, she asks the Court to "enter an order declaring that the provisions in the appraisal clause of [the Policy] which are contrary to the appraisal provisions mandated by [the Appraisal Statute] are void as a matter of law." (*Id.*, PageID.351.)  Second, she asks the Court to "enter an order submitting to appraisal the disagreements between [her] and [State Farm] concerning the extent (scope) and amount of damages caused by or resulting from the December 22, 2019, event, since [State Farm] has acknowledged liability for the loss under the [Policy]." (*Id.*)  Finally, she seeks entry of an order granting "summary

judgment on Defendant State Farm's meritless third affirmative defense of concealment or fraud, without the need for intervening discovery." (*Id.*)

The Court held a hearing on Haddock's motion on September 14, 2022.

## II

Haddock seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Under that rule, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 312, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

## III

The Court begins with Haddock's request for an order requiring State Farm to participate in the appraisal process with respect to her entire claim for damage to her dwelling – including those parts of the claim seeking reimbursement for damage over which there is a disagreement over causation. Haddock contends that the

appraisers may (indeed, must) properly resolve causation disputes when they determine the "amount of the loss."  For the reasons explained below, the Court agrees with Haddock that the appraisers must resolve the disputes concerning whether certain damage was caused by her burst pipe, but the Court declines to submit Haddock's claim for appraisal at this time.  State Farm has raised at least two plausible true coverage defenses, and those defenses must be resolved before the Court can determine whether to order the parties to participate in the appraisal process.

## A

Haddock's claims in this action arise under Michigan law.  The Court must apply that law as determined by the Michigan Supreme Court.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  But that court has not addressed the dispositive question here: whether appraisers, when determining the "amount of the loss," may resolve disputes over whether claimed damage was caused by a covered loss or whether they are strictly limited to valuing the cost to repair damage that the parties agree was caused by a covered loss.  Under these circumstances, the Court "must predict how the [Michigan Supreme Court] would rule by looking to all the available data." *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 360 (6th Cir. 2012) (quoting *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)). "The sources of data which may guide [the Court's] inquiry include"

analogous decisions of the Michigan Supreme Court; decisions of the Michigan Court of Appeals; "positions expressed in a restatement of law;" law review commentaries; and "decisions from other jurisdictions or the 'majority rule.'" *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985) (citations omitted).

## B

The dispute between the parties here turns on the meaning and scope of the term "amount of the loss."  At first blush, it may seem that the Court should discern the scope and meaning of that term by applying general rules of contract construction.  Indeed, the term appears in the Policy, and it has long been clear under Michigan law that "[i]nsurance policies are contracts subject to the same contract construction principles that apply to any other species of contract." *Bazzi v. Sentinel Ins. Co.*, 919 N.W.2d 20, 24 (Mich. 2018) (quotations omitted).

But there is a wrinkle here with respect to construing the term "amount of the loss."  As noted above, that term appears in the Policy's appraisal provision, and that provision is mandated by the Appraisal Statute.

Because "amount of the loss" appears in a statutorily required contractual provision, the Court's task is one of statutory construction rather than contract interpretation.  As the Michigan Supreme Court explained in *Bazzi*, "[w]hen a provision in an insurance policy is mandated by a statute, the policy and the statute must be construed together as though the statute were part of the policy, and *the*

11

*rights and limitations of the coverage are governed by that statute*." *Id.* (emphasis added; internal quotation omitted).

Michigan's rules of statutory construction are well-settled:

> Fundamental canons of statutory interpretation require us to discern and give effect to the Legislature's intent as expressed by the language of its statutes.  If such language is unambiguous, as most such language is, we presume that the Legislature intended the meaning clearly expressed – no further judicial construction is required or permitted, and the statute must be enforced as written.

*Garg v. Macomb County Community Mental Health Services*, 696 N.W.2d 646, 657 (Mich. 2005) (internal citations and quotations omitted).

## C

The Court has not found any decision from a Michigan state court that sheds substantial light on how the Michigan Supreme Court would decide whether appraisers may resolve causation questions when determining the "amount of the loss."  The Michigan Supreme Court does not appear to have decided any cases related to that question.  The Michigan Court of Appeals has issued one published decision concerning the scope of an appraisal, *see Auto-Owners Ins. Co. v Kwaiser*, 476 N.W.2d 467 (Mich. Ct. App. 1991), but the Court concludes that that decision does not provide much guidance here.

The facts of *Kwaiser* are straightforward.  In *Kwaiser*, a woman named Robin Kwaiser owned a mobile home that she insured under a fire insurance policy issued

by Auto-Owners. *See id.* at 467-68.  The roof over the living room collapsed because of heavy rain. *See id.*  An engineer hired by Auto-Owners discovered that the structure of the entire roof was rotted due to long-term trapped moisture and that any repair would necessarily require replacement of the entire roof. *See id.* at 468. Following the engineer's report, the parties "could not agree on a settlement of the claim." *Id.*  Kwaiser claimed that she was entitled to "more than $28,000" because that was the amount necessary to replace her entire roof. *Id.*  Auto-Owners countered that Kwaiser was entitled to only $6,801.70 – the cost to replace "the portion of the new roof that covered the living room." *Id.*  Because the parties could not agree upon the amount owed to Kwaiser, Auto-Owners "asked for an appraisal as provided for in [Kwaiser's] policy." *Id.*  At the end of the appraisal process, the appraisers determined that Kwaiser was entitled to $29,000. *See id.* at 469 n.2.

Auto-Owners then "brought [a] declaratory judgment action, asking the court to order that the matter be resubmitted for appraisal after a clarification of [its] liability." *Id.* at 468.  The trial court granted Kwaiser's motion for summary disposition and ordered Auto-Owners to pay the full amount of the appraisal. *See id.* Auto-Owners then appealed.

"On appeal, Auto-Owners argue[d] that the appraisers failed to determine the scope of coverage when assessing [Kwaiser's] damages." *Id.* at 469.  It contended "that the appraisers did not consider the policy exclusions and therefore assessed the

amount of damage to the entire roof." *Id*. Finally, it argued that "the appraisers acted

beyond their authority in making an award for damage to personal property that they

did not actually see." *Id*.

The Michigan Court of Appeals first addressed Auto-Owners' contention that

the appraisers should have considered the policy's exclusions. The court seemed to

reject that argument, but it nonetheless granted the relief requested by Auto-Owners

– reversal of the trial court's order confirming the appraisal award. *See id.* at 469-

70. The court explained:

> We conclude that the issue of coverage is for the court, not
> the appraisers. The appraisal process cannot legally settle
> coverage issues, as suggested by Auto–Owners. Where the
> parties cannot agree on coverage, a court is to determine
> in a declaratory action before an appraisal of the damage
> to the property. Consequently, the trial court erred in
> granting summary disposition to defendant without first
> determining the extent of coverage. The case must be
> remanded to the trial court for determination of the policy's
> coverage of the loss and Auto–Owners' liability.

*Id*.

This excerpt could arguably be read to suggest that appraisers may not

consider causation questions as part of the appraisal process. The excerpt seemed to

address and reject Auto-Owners' argument that the appraisers should have applied

the policy's exclusions during the appraisal process. It may thus be plausible to read

the passage as suggesting that the determination of whether certain damage was

caused by an excluded hazard is an "issue of coverage for the court." *Id.*

14

However, as Judge Mark Goldsmith of this Court persuasively explained, this excerpt "does not clearly define an 'issue for coverage.'" *Shina v. State Farm Fire and Cas. Co.*, 2021 WL 391419, at *4 (E.D. Mich. Feb 4, 2021) (Goldsmith, J.). *See also Shina v. State Farm Fire and Cas. Co.,* 2022 WL 989330, at *4 (E.D. Mich. Mar. 31, 2022) (Berg, J.) (agreeing with Judge Goldsmith that *Kwaiser* "leaves open to interpretation what is a 'coverage issue' for the court").[3]   Moreover, the excerpt from *Kwaiser* does not contain any analysis as to why a question of causation should be treated as an "issue for coverage."

In addition, as Judge Goldsmith further observed, a later section of the decision in *Kwaiser* suggests that appraisers *may* determine causation questions. *See Shina,* 2021 WL 391419, at *4.  In that section, the Michigan Court of Appeals held that the appraisers acted properly when they determined the value of certain personal property that they did not personally observe. *See Kwaiser*, 476 N.W.2d at 470.  The Court of Appeals said:

> The amount of loss attributable to personal property damage, as determined by the appraisers, is conclusive. The decision of the appraisers with regard to what particular articles or items of property are embraced within the general description of the property they are to appraise for damages is final and conclusive. See 14 Couch, Insurance, 2d, § 50:55, p 205. Although the policy requires defendant to "exhibit the damaged property to us or our representative as often as may be reasonably required," the appraisers' decision to award for loss without seeing some

---

[3] The *Shina* case was reassigned from Judge Goldsmith to Judge Berg.

> of the property, as apparently occurred in this case, reflects
> the method of determining the loss rather than a matter of
> coverage.

*Id.*   As Judge Goldsmith explained, this excerpt "can be read as allowing the appraisers to determine numerous factual issues beyond the cost of repair, including whether a particular loss is attributable to a covered or uncovered cause." *Shina,* 2021 WL 391419, at *4.   Indeed, many Judges of this Court have adopted that reading of *Kwaiser. See Shina,* 2022 WL 989330, at *4 (collecting cases).

In the end, the Court concludes that because *Kwaiser* seems somewhat internally inconsistent and lacks any substantial analysis concerning the scope of appraisers' duties, that decision does not shed much light on how the Michigan Supreme Court would resolve the question of whether appraisers may resolve causation disputes when they determine the "amount of the loss." *See CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 267 (D. Del. 2000) (explaining that *Kwaiser* does not provide a "clear" answer as to whether courts or appraisers should resolve causation disputes).

## D

The Court predicts that the Michigan Supreme Court would conclude, in line with the clear majority of other state and federal courts, that appraisers may consider disputed questions of causation when determining the "amount of the loss." Michigan's highest court would base that conclusion upon (1) the plain meaning of

16

"amount of the loss" as used in the Appraisal Statute and (2) the clear weight of authority supporting this reading of "amount of the loss." The United States Court of Appeals for the Tenth Circuit made the same prediction for the same reasons under Colorado law in *BonBeck Parker, LLC v. Travelers Indemnity Ins. Co. of America,* 14 F.4th 1169 (10th Cir. 2021), and that decision is instructive here.

*BonBeck Parker* involved an insurance policy that called for appraisers to determine "the amount of loss." After a hailstorm, the insured made a claim under the policy for hail damage to its roof. The insurer "acknowledged that some of the claimed damage to [the insured's] property was caused by a covered hailstorm but argued that the remaining damage was caused by uncovered events such as wear and tear." *Id*. at 1172. The insured "requested an appraisal to determine how much damage occurred, [but the insurer] refused this request unless [the insured] agreed that the appraisers would not decide whether the hailstorm in fact caused the disputed damage." *Id*. The insurer then filed an action seeking a declaration under Colorado law that the policy "preclude[d the appraisers] from determining causation issues." *Id*. at 1173. The district court rejected that contention and ruled in favor of the insured, and the insurer appealed.

The Tenth Circuit affirmed. It first noted that "because the Colorado Supreme Court has not addressed" whether appraisers may decide causation questions when determining the "amount of loss," it (the Tenth Circuit) would have to "predict how

17

that court would decide the issue." *Id*. at 1177.  The court predicted that the Colorado Supreme Court would allow appraisers to determine causation issues when assessing "the amount of loss."

That prediction followed from the fact that "the amount of loss" has "an ordinary meaning in the insurance context that unambiguously encompasses causation disputes like the one here." *Id.* at 1173.   The court explained that determining "the amount of loss" necessarily involves resolving causation questions because causation is an essential "component" of "loss":

> We first consider the language on which the district court based its conclusion that the Panel could decide what caused the roof damage: "the amount of loss." Because the Policy does not define that phrase, we must look elsewhere to discern its plain meaning. *See Renfandt v. N.Y. Life Ins. Co.*, 419 P.3d 576, 580 (Colo. 2018). Dictionary definitions are a good place to start. *See id.* ("When determining the plain and ordinary meaning of words, we may consider definitions in a recognized dictionary.").

> Although neither party cites a dictionary that defines the full phrase "amount of loss," several dictionaries define the word "loss." Black's Law Dictionary, for example, has a specific entry for that term in the insurance context: "The amount of financial detriment caused by ... an insured property's damage, for which the insurer becomes liable." *Loss*, Black's Law Dictionary (11th ed. 2019). So do everyday dictionaries: "[T]he amount of an insured's financial detriment due to the occurrence of a stipulated contingent event (as death, injury, destruction, or damage) in such a manner as to charge the insurer with a liability under the terms of the policy." Webster's Third New International Dictionary 1338 (Philip Babcock Gove ed. 1961); *see also* Merriam-Webster's Collegiate Dictionary

736 (11th ed. 2003) (defining "loss" as "the amount of an insured's financial detriment by ... damage that the insurer is liable for"). Significantly, these definitions all include a causation component, each making clear that "loss" refers to damage resulting from a covered event.

*Id.* at 1177-78 (footnote omitted).

The Tenth Circuit then highlighted that many other state and federal courts had likewise concluded that, given the definition of "loss," appraisers must resolve causation questions when determining "the amount of loss":

> The district court was by no means the first court to recognize that causation is an ingredient of loss. Indeed, several state courts have reached the same conclusion after citing the same definitions quoted above. *See Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012) (concluding, based on Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary, that "amount of loss" unambiguously "includes a determination of the cause of the loss" and that "dictionary definitions of 'loss' for purposes of insurance expressly contemplate an element of causation"); *N. Glenn Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 854 N.W.2d 67, 71 (Iowa Ct. App. 2014) (citing Black's Law Dictionary to support view that "[c]ausation is an integral part of the definition of loss, without consideration of which the appraisers cannot perform their assigned function"); *Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 913 N.W.2d 80, 92 (Iowa 2018) (agreeing with *North Glenn* and holding that "appraisers may decide the factual cause of damage to property in determining the amount of loss from a storm"). Federal courts applying state law have done the same. *See CIGNA*, 110 F. Supp. 2d at 264–65 (citing Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary to hold that phrase "amount of loss" "necessarily includes a determination of the cause of loss"). We therefore conclude that the Colorado Supreme

Court, if faced with the issue, would join these courts in recognizing that in the insurance context, the ordinary meaning of the phrase "amount of loss" encompasses causation. *See Phillips*, 73 F.3d at 1537 (explaining that "decisions ... of other state courts" inform our prediction of how state supreme court would rule).

*Id.* at 1178 (footnote omitted).

While this list of decisions assembled by the Tenth Circuit is impressive, it is not complete.  Several other state and federal courts have similarly held that appraisers must resolve causation questions in order to determine the "amount of loss." *See, e.g.*, *State Farm v. Johnson*, 290 S.W.3d 886, 893 (Tex. 2009) ("Any appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else."); *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1022 (Fla. 2002) (holding that "causation is …  an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed."); *Axis Surplus Ins. Co. v. Condor Corporation*, 19 F.4th 1062, 1063 (8th Cir. 2021) (holding that an "appraiser get[s] to determine what caused" a loss where an insurance policy "allows disagreements over 'amount of loss' to go to an appraiser."); *Philadelphia Indem. Co. v. WE Pebble Point*, 44 F.Supp.3d 813, 817-19 (S.D. Ind. 2014) (holding "that a party should be entitled to involve its appraisal rights where the insurer and insured dispute causation as well as the amount of damage").  The Court predicts that the Michigan Supreme

20

Court would find this substantial body of caselaw persuasive and would conclude, consistent with this majority rule, that the term "amount of the loss" in the Appraisal Statute unambiguously allows appraisers to resolve causation questions during the appraisal process.

Because the term "amount of the loss" in the Appraisal Statute "is unambiguous" and allows appraisers to consider causation questions, *BonBeck Parker, LLC*, 14 F.4th at 1181, the Michigan Supreme Court would likely not go further to consider whether allowing appraisers to evaluate causation issues is consistent with the purpose of the Appraisal Statute. But if that court did so, it would likely conclude that "the purpose of the [Appraisal Statute] only confirms what the text compels." *Id.* As the Tenth Circuit explained:

> As the district court persuasively reasoned, and as Travelers seems to agree, the appraisal provision's aim "is to avoid litigation and encourage settlement of the parties' dispute." App. vol. 7, 1296; *see also* Aplt. Br. 32 ("The purpose of the appraisal provision is to afford a simple, speedy, inexpensive[,] and fair method determining the amount of loss."). Removing causation from the appraisal process frustrates that purpose by "reserving a plethora of detailed damage assessments for judicial review." *CIGNA*, 110 F. Supp. 2d at 269. Doing so is especially unwise when, as here, "the causation question involves separating loss due to a covered event from a property's pre-existing condition." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 892 (Tex. 2009). As the Texas Supreme Court observed, that kind of causation issue arises "in every case," and if "appraisers can never allocate damages between covered and excluded perils, then [they] can never assess hail damage unless a roof is brand

new." *Id.* at 892–93. Such a result "would render appraisal
clauses largely inoperative, a construction we must
avoid." *Id.* at 893. Other district-court decisions have
recognized as much, and we find their reasoning
persuasive. *See, e.g.*, *Auto-Owners Ins. Co. v. Summit
Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1103 (D.
Colo. 2015). Accordingly, even if the appraisal provision
were ambiguous and even if that ambiguity were not to be
construed against Travelers, its purpose only bolsters the
district court's conclusion that the Panel can decide the
cause of loss.

*Id.*[4]

Finally, the Michigan Supreme Court would reject State Farm's contention
that causation disputes involve "coverage issue[s]" that may only be decided by a
court.  That court would agree with the many Judges of this Court who have
concluded that where, as here, the parties do not dispute the meaning of any policy
terms and where the insurer acknowledges that the insured has suffered a covered
loss, a disagreement over the extent of damage caused by the loss "does not present
a coverage issue." *Smith v. State Farm Fire & Cas. Co.*, 737 F.Supp.2d 702, 711
(E.D. Mich. 2010) (Borman, J.).  As United States District Judge Robert Cleland has
explained, "courts make legal determinations as to the categories of coverage;
appraisers make factual findings as to whether specific damage fits into those

---

[4] The purpose of an appraisal is the same under Michigan law as under Colorado
law.  As the Michigan Court of Appeals has explained, an appraisal is "a substitute
for judicial determination of a dispute concerning the amount of a loss," which is "a
simple and inexpensive method for the prompt adjustment and settlement of claims."
*Kwaiser*, 476 N.W.2d at 469.

categories or not. Where, as here, the parties do not dispute the categories of coverage … the suit is ripe for appraisal." *Cox v. State Farm Fire & Cas. Co.*, No. 19-12235, 2020 WL 1888824, at *7 (E.D. Mich. Apr. 16, 2020). Simply put, in the words of United States District Judge Thomas Ludington, "coverage is not at issue" where, as here, an insurer has "admit[ted] that [the] loss is covered under its policy," and the parties "only are at odds about the amount of the loss." *Laframboise v. State Farm Fire & Cas. Co.*, __ F.Supp.3d __, 2022 WL 627147, at *6 (E.D. Mich. Mar. 3, 2022). *See also Shina v. State Farm*, 2022 WL 989330, at *4-6 (E.D. Mich. Mar. 31, 2022) (Berg, J.) (same). The Michigan Supreme Court would reach this same conclusion and would hold that, under these circumstances, appraisers may resolve disputes over whether certain damage was caused by a covered loss.

## E

State Farm has not cited a single decision in which any court has held that appraisers may not resolve causation disputes where an insurer has admitted that the insured suffered a covered loss. State Farm relies principally on two decisions, but neither held that appraisers may not consider questions of causation.

First, State Farm cites the Michigan Court of Appeals' decision in *Kwaiser*, *supra*. But, for all of the reasons explained above, that decision does not shed much light on the question of whether appraisers may resolve causation disputes. Moreover, to the extent that *Kwaiser* does apply here, it has been interpreted by

many Judges of this Court as cutting against State Farm's position that appraisers may not resolve causation disputes.

Second, State Farm directs the Court to *Leadbetter v. State Farm Fire and Cas. Co.*, 2022 WL 413912 (Mich. Ct. App., Feb. 10, 2022). However, *Leadbetter* also did not address whether a dispute over causation is a "coverage issue" for a court rather than a matter to be addressed by an appraiser. Rather, *Leadbetter* stands for the proposition that where an insurer asserts a true coverage defense – in that case, the defense that the insured was not entitled to coverage because he had failed to comply with the requirement in his policy to provide documentation requested by his insurer – a court must resolve the coverage question before compelling the parties to participate in an appraisal.[5]

State Farm also directs the Court to a Memorandum issued by the Michigan Department of Insurance and Financial Services on December 20, 2017. According

---

[5] During the hearing before the Court, counsel for State Farm suggested that, in *Harry H. Vorderbrug, III v. State Farm Fire and Casualty Company*, W.D. Mich. Case No. 21-cv-80, a Judge of the United States District Court for the Western District of Michigan ruled that appraisers may not decide causation questions when determining the "amount of the loss." The Judge in *Vorderbrug* did not issue a full written opinion explaining his decision, so State Farm filed with this Court a transcript of the hearing at which the Judge announced his ruling. (*See Vorderbrug* Hr'g Tr., ECF No. 24.) The transcript reveals that the ruling in *Vorderbrug* was narrow. The Judge in that case held only that true coverage disputes – which, in that case, were related to allegations of fraud – had to be resolved before the appraisal process began. (*See id.*, PageID.1373.) While there was some discussion during the hearing as to whether appraisers could resolve causation questions, the Court did not actually rule on that question.

to State Farm, the Memorandum confirms that "courts should decide" causation disputes like the one in this case. (State Farm Resp. to Mot. for Summ. J., ECF No. 10, PageID.496-497.)   The Court disagrees.   If anything, the Memorandum (which is not nearly as clear as it could have been) suggests that appraisers should resolve causation questions when an insurer determines that an insured has suffered a covered loss.   The Memorandum says that, "when liability under [an] insurance policy is not in dispute" – *i.e.*, where a loss is undeniably covered under the policy – and where there is a disagreement over the "amount of the loss," "an insurer's participation in the appraisal process is mandatory." (Memorandum, ECF No. 10-8, PageID.586.)   Moreover, the Memorandum quotes at length from the decision in *Smith*, 737 F.Supp.2d at 710, which, as described above, held that appraisers may resolve causation disputes where an insurer acknowledges that an insured has suffered a covered loss. (*See id.*)   For these reasons, the Memorandum does not support State Farm's view that appraisers may not resolve causation disputes. *See Hart v. State Farm Fire & Cas. Co.*, 556 F.Supp.3d 735, 747 (E.D. Mich. 2021) (rejecting State Farm's argument that the Memorandum confirms that appraisers may not decide causation questions).

## F

For all of the reasons explained above, the Michigan Supreme Court would hold that, when an insurer acknowledges that an insured has suffered a covered loss,

and where appraisers are engaged to determine the "amount of the loss," the appraisers may – indeed, must – resolve questions of whether damage claimed by the insured was caused by the covered cause of loss.  Thus, State Farm may not avoid the appraisal process on the ground that there is a dispute over causation with respect to some of the damage for which Haddock seeks reimbursement.

## IV

The Court's conclusion that appraisers may resolve causation disputes does not mean that Haddock is now entitled to an order submitting her claim to the appraisal process.  As Haddock's counsel acknowledged during the hearing before the Court, to the extent that State Farm has asserted any true and plausible coverage defenses, those defenses must be resolved before the Court may issue any order compelling an appraisal.   The Michigan Court of Appeals reached the same conclusion in *Leadbetter*, *supra*.   Thus, the Court must determine whether State Farm has asserted any plausible coverage defenses.  It has.

State Farm has asserted at least two viable coverage defenses.  First, State Farm asserts that Haddock's claim is barred by her failure to comply with the provisions of the Policy requiring her to exhibit her damaged property for inspection by State Farm. (*See* State Farm's Fourth Amended Aff. Defense, ECF No. 27, PageID.1389-1390.)  While Haddock argues that the undisputed evidence shows otherwise, (*See* Haddock Resp. to State Farm Mot. for Summ. J., ECF No. 14,

PageID.928-931), the Court concludes that it cannot properly resolve this defense without discovery.  Accordingly, the Court will permit State Farm to take discovery on this defense.   Second, State Farm contends that Haddock's claim is barred because she committed fraud and/or concealed facts while State Farm was investigating her claim. (*See* State Farm's Third Amended Aff. Defense, ECF No. 27, PageID.1388.)   Haddock again contends that the undisputed evidence shows otherwise, and she argues that she is entitled to summary judgment in her favor on that defense. (*See* Haddock Mot., ECF No. 9, PageID.373-378.)  However, the Court cannot conclude that this defense fails as a matter of law at this point in the proceedings.  Thus, the Court will also permit State Farm to take discovery on this defense.[6]

---

[6] When State Farm issued what it now calls its "formal denial letter," (State Farm Resp. to Haddock Mot. for Summ. J., ECF No. 10, PageID.487), it did not identify any alleged fraud or concealment by Haddock as a reason for denying her claim. (*See* State Farm 12/17/2020 Ltr., ECF No. 9-8, PageID.447.)  Thus, State Farm's fraud and concealment defense may fail under what is known as the mend-the hold doctrine.  Generally speaking, under that doctrine, "once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." *South Macomb Disposal Auth v American Ins. Co.*, 572 N.W.2d 686, 712-713 (Mich. App. 1997) (quotation marks and citation omitted).  However, State Farm's fraud and concealment defense may not be barred by the mend-the-hold doctrine to the extent that the defense rests on alleged acts and omissions by Haddock that occurred after State Farm issued its formal denial letter. It is not yet clear to the Court whether State Farm's fraud and concealment defense is based upon such later-discovered facts.  Thus, the Court cannot yet determine whether the mend-the-hold doctrine bars the defense in whole or in part.

Since State Farm has stated at least two plausible coverage defenses, Haddock is not yet entitled to an order submitting her claim to the appraisal process.[7]   The Court will set an expedited schedule for discovery into these defenses and will adjudicate them as quickly as possible.

V

Finally, the Court turns to Haddock's request that the Court declare that several aspects of the appraisal provision in the Policy are void because they are contrary to the Appraisal Statute.   The Court denies that request without prejudice for two reasons.

First, at this point in the proceedings, State Farm has only asserted one of the challenged aspects of the appraisal provision as a basis for refusing to engage in the appraisal process.   The sole aspect invoked by State Farm is the one that requires Haddock to itemize, in writing, the pieces of damaged property that she intends to

---

[7] State Farm has asserted several other affirmative defenses that seek to avoid liability on the ground that some of the damage claimed by Haddock was caused by hazards that are not covered under the Policy.   For instance, State Farm asserts that Haddock's claim is barred in part because some of her losses were caused by mold, neglect, or latent defects. (*See, e.g.*, Amended Aff. Defs., ECF No. 27, PageID.1391-94.)   For the reasons explained above, the causation questions underlying those defenses must be resolved by the appraisers, and those defenses are thus not appropriately resolved by the Court under the circumstances presented here.   In addition, apart from State Farm's fraud and concealment defense and its defense that Haddock failed to present her property for inspection, all of State Farm's other affirmative defenses are likely barred by the mend-the-hold doctrine because State Farm did not identify the reasons underlying these defenses when it denied Haddock's claim in part. *See South Macomb Disposal Auth., supra*.

28

submit for an appraisal 10 days before making her demand for an appraisal. (*See* State Farm Resp. to Mot. for Summ. J., ECF No. 10, PageID.503.)   The Court declines to give an advisory opinion as to whether the other aspects of the appraisal provision that State Farm has not asserted are void.

Second, the Court concludes that the appropriate time to address the validity of the one appraisal provision that State Farm did invoke is after the Court determines whether State Farm may avoid liability altogether based upon the two plausible coverage defenses identified above.  If State Farm succeeds on either of these defenses, then Haddock would have no right to an appraisal, and there would be no need to address the lawfulness of the aspect of the appraisal provision invoked by State Farm.  Thus, the Court will rule on the lawfulness of that provision only if it determines that State Farm cannot prevail on its coverage defenses outlined above.

# VI

For all of the reasons explained above, Haddock's motion for summary judgment (ECF No. 9) is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE** as follows:

1.   The motion is **GRANTED** to the extent that it seeks a determination that State Farm may not exclude from the appraisal process claimed damage over which there is a dispute about causation;

29

2.      The motion is **DENIED WITHOUT PREJUDICE** to the extent that it seeks an order submitting the dispute between Haddock and State Farm to the appraisal process; and

3.      The motion is **DENIED WITHOUT PREJUDICE** to the extent that it seeks an order declaring that portions of the Policy's appraisal provision are void.

The Court will promptly confer with the parties to set an expedited schedule for the completion of discovery on State Farm's plausible coverage defenses identified above.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 25, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 25, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126